

**ENTERED**
**07/20/2012**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |
|---|---|
| IN RE | ) |
| JOHN KEVIN HAVELKA, | ) CASE NO. 10-31397-H3-7 |
| Debtor, | ) |
| MICHAEL F. BARDWIL, | ) |
| Plaintiff, | ) |
| v. | ) ADV. NO. 10-3224 |
| JOHN KEVIN HAVELKA, | ) |
| Defendant. | ) |

<u>MEMORANDUM OPINION</u>

The court has held a trial of the above captioned adversary proceeding.  The following are the Findings of Fact and Conclusions of Law of the court.  A separate Judgment will be entered denying the relief sought by Plaintiff.  To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such.  To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

John Kevin Havelka ("Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on February 22, 2010.

In the instant adversary proceeding, Michael F. Bardwil ("Plaintiff"), a vascular surgeon, seeks a determination that a debt Debtor owes to Plaintiff is nondischargeable. Prior to the filing of Debtor's Chapter 7 petition in this court, Plaintiff filed suit against Debtor in the 333rd Judicial District Court of Harris County, Texas. After Debtor filed the Chapter 7 petition, Plaintiff sought and obtained relief from stay. Thereafter, the state court entered judgment for Plaintiff, in the amount of $45,916, plus prejudgment and postjudgment interest, $30,000 in attorney fees, and costs of court. (Plaintiff's Exhibit 38). The state court did not recite findings of fact or conclusions of law with respect to its judgment.

Plaintiff and Debtor met during late 2004, and saw one another socially during 2005. Plaintiff testified that, on the occasions of their social meetings, Debtor frequently discussed his work as a real estate broker.

Debtor testified that he has been a real estate broker since 1982. He testified that his work as a real estate broker has been primarily in representing the sellers of raw land to developers, and in representing developers, as the sellers of

subdivided lots to home builders.

Debtor testified that, on several occasions, he has represented home builders in transactions in which the home builder sells a model home to an investor, and then the home builder leases the property from the investor, in order to remain in possession of the model home. He testified that these transactions typically provide for the rental payments to be sufficient to pay the mortgage payments on the property, plus a small amount.

Debtor testified that he approached Plaintiff regarding such a transaction. Debtor testified that, although the majority of the investors in the model homes Debtor was engaged to sell reside outside Texas, Debtor believed that making such a transaction available to Plaintiff would be beneficial to Plaintiff. Debtor testified that his goal, in presenting the transaction to Plaintiff, was to encourage Plaintiff to assist with treatment of the medical condition of Debtor's wife.

Debtor presented the outline of the transaction to Plaintiff in writing. Debtor's undated written outline (which bears a line from a fax machine with a date of December 12, 2005) states in pertinent part:

> The model is located in Oak Park Ridge subdivision, which is Hwy. 6 and Westpark. The price is $179,000. With 10% down your monthly payment will be around $1700 and I will get Meridian to lease it back from you for $2000. New homes are now going up 1-1½ percent a month. The builder keeps raising the price of the

> model to get top appraisal value.  At the end of two
> years the model should have gone up $40,000 and you
> will have made $7200 in rent.  Your investment was
> $18,000.  Your tax write-offs are approximately $35000.
> If you sell it at the end of the two years lease your
> return on investment is approximately 270% plus the
> write-offs.

(Plaintiff's Exhibit 2).

Debtor testified that builders typically do not take offers of less than the asking price on their new home inventory. He testified that, during the period during which Plaintiff purchased a model home, builders continually raised their prices of their homes.

On December 20, 2005, Plaintiff entered into an earnest money contract for purchase of the property in the Oak Park Ridge subdivision from Meridian Homes.  The contract called for a purchase price of $178,695.  (Plaintiff's Exhibit 3).

Plaintiff testified that Debtor told him, with respect to the model home, that Plaintiff would be able to get the model home "at a value below what they would be selling for." Plaintiff testified that Debtor told him that the selling price was "a really good deal, that this property could be easily sold for more than that."

Plaintiff testified that he believed Debtor was representing Plaintiff with respect to his purchase of the property, and was not representing the seller of the property. He testified that he did not receive a disclosure of Debtor's

representation.  Debtor testified that he did not provide a written disclosure to Plaintiff of Debtor's representation of the seller.  He testified that he simply forgot to do so.  The court finds Debtor's testimony on this point credible.

Prior to closing, Plaintiff did not view the property, did not obtain the report of the Harris County Appraisal District with respect to the property, and did not check out prices in the neighborhood.

The closing of the sale took place on February 1, 2006. Plaintiff paid $193,067.23 for the property, including closing costs.  (Plaintiff's Exhibit 11).  Plaintiff executed two notes payable to the mortgage company, Aegis Wholesale Corporation ("Aegis"), in the original principal amounts of $142,956 and $35,739.  (Plaintiff's Exhibits 4, 5).

Plaintiff did not attend the closing of his purchase of the property.  He testified that someone brought the papers to his office for him to sign, one day after the scheduled closing.

Plaintiff testified that, five days before the scheduled closing, Plaintiff met with Debtor, Debtor's wife, and a mortgage broker.  Plaintiff testified that he first became concerned about the purchase of the property when closing papers brought to him stated closing costs $4,000 higher than he had discussed with Debtor five days before the scheduled closing.  He testified that he nonetheless decided to sign the papers and

complete the transaction, because Debtor had assured him that he was getting a good deal.

Debtor testified that he negotiated the lease with Meridian for Plaintiff.

Several days after the closing, Plaintiff visited the property for the first time. At that time, he discovered a flyer in the model home, advertising the same floor plan for $151,990. (Plaintiff's Exhibit 16). Plaintiff testified that he contacted Debtor, requesting an explanation of the price. He testified that he was not satisfied by Debtor's explanation of how the price was determined.

In preparing for litigation, Plaintiff engaged an appraiser to value the property. Plaintiff's appraiser, Richard R. Prigmore, Jr., testified that he viewed the property on August 27, 2009, and completed his appraisal report on September 23, 2009. He testified that his appraisal report measures the value of the property with an effective date of January 10, 2006.[1] He testified that he measured the value retrospectively by looking at sales listed in MLS[2] during the 12 to 18 months prior to the effective date of the appraisal. He testified that he valued the

---

[1] The January 10, 2006 date was selected because it was the date of the appraisal performed for Aegis.

[2] The court presumes that by "MLS," Prigmore intended to refer to the Multiple Listing Service of the Houston Association of Realtors.

property at $143,500 as of January 10, 2006.

Prigmore testified that he believes the approach taken by the appraiser hired by Aegis was flawed, because it identified as comparable sales the sales of property located in neighborhoods other than the neighborhood in which this property was located.

Debtor testified that, between the time he first discussed the property with Plaintiff and the closing, the base price of the property had gone up from $146,000 to $151,900.  He testified that the final price of the property reflected upgrades to the property and his commission.

Debtor testified that he had never transacted business with Aegis before Plaintiff's transaction with Aegis, and has not entered into any transactions with Aegis since Plaintiff's transaction with Aegis.  Debtor testified that he does not know the appraiser who appraised the property for Aegis.

Debtor testified that, during 2007, the market for housing in the Houston area crashed.  He testified that the builder, Meridian, ceased doing business.

The court finds that the testimony of both Debtor and Plaintiff was credible.

## Conclusions of Law

In the instant adversary proceeding, Plaintiff seeks a determination that the debt reflected in the state court judgment

is excepted from discharge, under Sections 523(a)(2)(A) and 523(a)(4) of the Bankruptcy Code.

The party asserting an exception to discharge must prove by a preponderance of the evidence that the debt is nondischargeable. <u>Grogan v. Garner</u>, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge a debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
>
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

For a debt to be nondischargeable under section 523(a)(2)(A), the creditor must show (1) that the debtor made a representation; (2) that the debtor knew the representation was false; (3) that the representation was made with the intent to deceive the creditor; (4) that the creditor actually and justifiably relied on the representation; and (5) that the creditor sustained a loss as a proximate result of its reliance. <u>In re Acosta</u>, 406 F.3d 367 (5th Cir. 2005), <u>citing</u> <u>In re Mercer</u>, 246 F.3d 391 (5th Cir. 2001).

In the instant case, Plaintiff has demonstrated that Debtor made representations as to the value of the property, and

that Plaintiff relied on Debtor's representations.  Plaintiff has not proven by a preponderance of the evidence that Debtor knew his representations were false.  Debtor's credible testimony indicates that he believed that his representations regarding the value of the property were true.  Moreover, Plaintiff's evidence does not support an inference of an intent to deceive.  Debtor's failure to disclose his representation of the seller, which was at odds with the legal obligations of a real estate broker, does not lead to the conclusion that Debtor intended to deceive Plaintiff.  The court concludes that Plaintiff has not met his burden of proof under Section 523(a)(2)(A) of the Bankruptcy Code.[3]

Section 523(a)(4) of the Bankruptcy Code excepts from discharge a debt:

> (4)  for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C. § 523(a)(4).

Plaintiff has not raised an issue as to larceny. Embezzlement is defined for purposes of Section 523(a)(4) of the Bankruptcy Code as the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose

---

[3] Because the court concludes that Plaintiff has not met his burden of proof regarding knowing false representations and an intent to deceive, the court does not reach the question of whether Plaintiff's reliance on Debtor's representations was justifiable.

9

hands it has lawfully come.  Miller v. J.D. Abrams Inc. (Matter of Miller), 156 F.3d 598 (5th Cir. 1998).  Plaintiff presented no evidence as to property entrusted to Debtor.  The court concludes that Plaintiff has not met his burden of proof as to embezzlement.

Under Section 523(a)(4) of the Bankruptcy Code, the term "fiduciary" is distinct from the concept of a fiduciary under the common law; it is limited to instances involving express or technical trusts.  The purported trustee's duties must arise independent of any contractual obligation.  Matter of Shcolnik, 670 F.3d 624 (5th Cir. 2012), citing Matter of Tran, 151 F.3d 339 (5th Cir. 1998).

In the instant case, while Debtor may have been considered a fiduciary under the common law, Debtor was not the trustee of an express trust, with respect to either his representations as to the value of the property, or the commission he received on the sale.  The court concludes that the fraud or defalcation grounds for exception to discharge under Section 523(a)(4) do not apply to the instant case.

Based on the foregoing, the court will enter a Judgment denying the relief requested by Plaintiff.

Signed at Houston, Texas on July 20, 2012.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE